IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VERNON COOKS, JR., 34976-177, | § | |
| Petitioner, | § | |
| | § | 3:11-CV-607-L |
| v. | § | 3:06-CR-085-L |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions and Recommendation of the United States Magistrate Judge follow:

**I. Procedural Background**

Petitioner challenges his conviction involving a mortgage fraud scheme. Petitioner was convicted of seven counts of wire fraud (counts 1- 7), one count of bank fraud (count 8), and six counts of money laundering (counts 9 - 14), in violation of 18 U.S.C. §§ 1343, 1344 and 1957. On October 19, 2007, Petitioner was sentenced to 135 months in prison, a five-year term of supervised release, and $1,443,954.43 in restitution.

On November 23, 2009, the Fifth Circuit Court of Appeals affirmed Petitioner's conviction and sentence. On March 22, 2010, the Supreme Court denied Petitioner's petition for writ of certiorari.

On March 24, 2011, Petitioner filed the instant petition pursuant to 28 U.S.C. § 2255. He argues he received ineffective assistance of counsel when counsel:

Page 1

1. Failed to adequately advise him of all the relevant facts and applicable law preventing Petitioner from making an informed decision regarding whether to plead guilty or proceed to trial;

2. Failed to adequately explain the Sentencing Guidelines and suggested Petitioner would receive thirty to forty months in prison if he was found guilty.

On July 21, 2011, Respondent filed its answer. Petitioner did not file a reply. The Court now finds the petition should be denied.

## II. Factual Background

The following facts are take from the Fifth Circuit's opinion.

> Cooks was convicted of being the mastermind behind an ingenious but misguided scheme to cheat mortgage lenders by fraudulently obtaining house mortgage loans. In most of the accused transactions, the documentary evidence and trial testimony show that Cooks followed the same basic pattern. For each transaction, Cooks first recruited an inexperienced real estate investor to serve as the nominal owner of the house, a so-called "straw purchaser." When Cooks found a house for sale, he then contracted with its owner to buy it. At the same time, Cooks entered into a contract to sell the same house to the straw purchaser for a much higher price. Cooks worked with one of two mortgage brokers, Abdul Karriem ("Karriem") and Dierdre Anderson ("Anderson"), to handle the mortgage loan process for each straw purchaser.
>
> To obtain each loan for the higher price, Cooks and one of the mortgage brokers created a loan application for the straw purchasers that would persuade the lender of two things: one, that the house was worth substantially more than its real value; and two, that the straw purchaser qualified for the loan. To that end, Cooks and his broker cohorts forged and faked key documents for each application, or directed the straw purchasers to make false representations themselves. For each transaction, these documents included an appraisal (forged with the name and license number of a real licensed appraiser), a loan application that vastly overstated the straw purchaser's income and assets, and fake financial documents (tax returns, W-2's, rent verification forms, etc.). After the sales closed, the difference in sales price was left in a bank account controlled by Cooks. Cooks initially sent each straw purchaser checks to pay the mortgage, as promised. After a short period of time – generally less than six months – the payments from Cooks stopped, and the straw purchasers were then forced into foreclosure.

> Cooks varied his methods in two transactions. In one case, there was no bona fide seller at all because Cooks already owned the house at the time of the sale. In most other respects, however, this transaction followed Cook's pattern: a straw purchaser bought the home, with a loan fraudulently obtained by Cooks and his mortgage brokers. In another variation, Cooks contracted with a construction company to buy a house for $79,900. He then submitted a duplicate contract with a sales price of $125,000 to the mortgage lender. In support of the copycat contract, Cooks submitted a duplicate warranty deed and a HUD settlement statement listing the $125,000 price. Cooks pocketed the $45,100 difference, with the mortgage company receiving $4,300, more than half of which went to the mortgage broker Anderson.
>
> Cooks was indicted on wire fraud, bank fraud, and money laundering charges. Karriem and Anderson were also indicted. Karriem pleaded guilty and testified for the government. Following an initial mistrial, the district court held a three-week trial in 2007. Witnesses included the bona fide sellers, straw purchasers, representatives of the mortgage companies involved, and Karriem. Expert witnesses in appraisal and mortgage fraud also testified. The Government submitted the fraudulent appraisals, tax returns, rental verifications, loan applications, title documents, sales contracts, closing documents, and the checks and bank account records used to carry out the transactions. Cooks testified in his own defense. The jury acquitted Anderson, but convicted Cooks on all charges. The district court sentenced Cooks to 135 months' imprisonment, nearly one and one half million dollars in restitution, and a five-year term of supervised release.

*United States v. Cooks*, 589 F.3d 173, 178-79 (5th Cir. 2009).

### III. Discussion

**Ineffective Assistance of Counsel**

To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

**1.     Explain Applicable Law**

Petitioner argues his counsel failed to adequately explain the issue of relevant conduct under the Sentencing Guidelines, and that counsel also suggested he would receive thirty to forty months in prison if he was found guilty. Petitioner's claims are conclusory. He submits no evidence to support his claims. Further, at the conclusion of the sentencing hearing, Petitioner stated he was satisfied with his counsel. He stated, "I would like to thank the Jackson Law Firm and particularly attorney Ray Jackson which is my brother for presenting such a wonderful facts [sic] of this case . . . ." (October 19, 2007 Sent. Tr. at 121.) Petitioner's claims should be denied.

**2.     Decision to Proceed to Trial**

Petitioner argues his counsel failed to adequately advise him of the relevant law, which prevented him from making an informed decision to either plead guilty or proceed to trial. Specifically, he states he could have received a three-level reduction in sentence for acceptance of responsibility if he had pled guilty. Petitioner, however, submits no evidence that his counsel did not adequately advise him regarding the law. During sentencing, defense counsel stated:

"We believe that Mr. [Cooks] would have had an opportunity to maybe even have pled had the money laundering counts not been in there and been allowed to have the two-level departure for acceptance of responsibility . . . ." (*Id*. at 125.) Petitioner has failed to show that his decision to proceed to trial was a result of ineffective assistance of counsel, rather than his own strategic decision. Petitioner's claim should be denied.

## **RECOMMENDATION**

For the foregoing reasons, the Court recommends that the motion to correct, vacate or set-aside sentence pursuant to 28 U.S.C. § 2255 be denied.

Signed this 25th day of January, 2013.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).